UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GEOFF WINKLER, AS RECEIVER FOR PROFIT CONNECT WEALTH SERVICES, INC., <br><br>   Plaintiff(s), <br><br> v. <br><br> ARNOLD THOMPSON, et al., <br><br>   Defendant(s). | Case No.2:25-CV-1522  JCM (DJA) <br><br> ORDER |

Presently before the court is defendant David Bruerd's motion to dismiss.  (ECF No. 13). Plaintiff Geoff Winkler, as receiver for Profit Connect Wealth Services, Inc., filed a response (ECF No. 22).

Also before the court is defendant Bethany Voydat's motion to dismiss.  (ECF No. 17). Plaintiff filed a response (ECF No. 23).

Also before the court is defendant John Guetterman's motion to dismiss.  (ECF No. 19). Plaintiff filed a response (ECF No. 24), to which Guetterman replied (ECF No. 25).

**I.    Background**

On July 16, 2021, the U.S. District Court for the District of Nevada unsealed an SEC action that was brought against Joy Kovar and Brent Kovar.  (ECF No. 1 at 6).  Since at least May 2018, the Kovars raised investor funds through Profit Connect Wealth Services, Inc. ("Profit Connect"), while assuring investors their money would be invested in securities trading and cryptocurrencies based on recommendations made by an "artificial intelligence supercomputer."  (*Id.*).

The Kovars told investors that they had the opportunity to invest by opening a "Wealth Builder" account and purchasing a supercomputer "seat" that represented "cycle time on our

supercomputer system." (*Id.*). These accounts were allegedly "not affected by the current market volatility" because "the supercomputer system guides the use of Profit Connect internal funds to be focused on long and short position in foreign currency, stocks, block-chain calculations, venture capital services and real estate opportunities." (*Id.*). The Kovars claimed Profit Connect's supercomputer generated enormous returns, which allowed Profit Connect to guarantee investors fixed returns of twenty to thirty percent per year with monthly compounding interest. (*Id.*). In reality, over ninety percent of Profit Connect's funds came from investors. (*Id.*).

The Kovars then allegedly misused investor money by transferring millions of dollars to the Kovars' personal bank accounts, paying agents, and making "Ponzi-like payments to other investors." (*Id.*).

In the SEC action, the Kovars agreed to a preliminary injunction prohibiting future violations of the Securities and the Exchange Act, and further agreed to the appointment of a permanent receiver of Profit Connect because they did "not dispute that the SEC [was] able to the make the requisite showing in order to obtain an asset freeze . . . and [the] appointment of a permanent receiver over Profit Connect and all of its subsidiaries and affiliates." (*Id.*). The court then appointed plaintiff Geoff Winkler as the permanent receiver of Profit Connect on August 6, 2021, granting Winkler broad authority to investigate claims and institute actions and legal proceedings on behalf of Profit Connect and its investors. (*Id.*).

The Kovars relied on agents or promoters to market Profit Connect, and from May 2018 through July 2021, these agents or promoters were paid over $3 million, or approximately twenty-six percent of the funds from investors. (*Id.* at 7). Winkler now brings suit against the agents and promoters of Profit Connect alleging (1) fraudulent transfer, (2) unjust enrichment, and (3) costs, expenses, and attorneys' fees. (*See id.* at 7–12).

Although eighteen individuals have been sued, only three (David Bruerd, Bethany Voydat, and John Guetterman) (collectively "defendants") have filed motions to dismiss. For the purpose of this order, the following additional facts are relevant. Between August 13, 2020, and July 8, 2021, Profit Connect transferred to defendant David Bruerd $36,401.10 in purported bonuses or commissions for bringing investors into Profit Connect. (*Id.* at 9). Between August 19, 2020, and

July 12, 2021, Profit Connect transferred to defendant Bethany Voydat $37,622.88 in purported bonuses or commissions for bringing investors into Profit Connect. (*Id.*). Between March 4, 2019, and July 6, 2021, Profit Connect transferred to defendant John Guetterman $203,634.65 in purported bonuses or commissions for bringing investors into Profit Connect. (*Id.*).

**II.     Legal Standard**

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

**III.    Discussion**

Each defendant moves to dismiss the complaint, arguing that plaintiff's claims are barred by the statute of limitations because the transfers to each defendant occurred more than four years ago.

The court must determine whether the "running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (quoting *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980)). "[A] complaint cannot be dismissed

unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1206 (9th Cir. 1995).

Defendants indirectly and directly implicate the discovery rule of accrual of a cause of action for statute of limitation purposes. Under the discovery rule, a cause of action accrues when the plaintiff discovers, or reasonably should have discovered, the facts giving rise to the claim, rather than when the wrongful act occurs. *Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990). The rule is grounded in fairness, ensuring that plaintiffs are not barred from seeking relief before they know that they have been injured and can identify the cause of that injury. *Id.*

A. Claim One: Fraudulent Transfers

Plaintiff alleges that defendants fraudulently transferred money in violation of NRS 112.180(1)(a–b) and NRS 112.190. (*See* ECF No. 1 at 11). Nevada's Uniform Fraudulent Transfer Act provides limitations on actions brought for fraudulent transfers. NRS 112.230. The limitations provided are as follows:

> 1. A claim for relief with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
> (a) Under paragraph (a) of subsection 1 of NRS 112.180, within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant;
> (b) Under paragraph (b) of subsection 1 of NRS 112.180 or subsection 1 of NRS 112.190, within 4 years after the transfer was made or the obligation was incurred; or
> (c) Under subsection 2 of NRS 112.190, within 1 year after the transfer was made or the obligation was incurred.

NRS 112.230(1).

*1. Actual Fraud*

Plaintiff's claim for actual fraud is brought under NRS 112.180 and is subject to the four-year statute of limitations set forth in NRS 112.230(1)(a). Defendants contend that the final transfer each of them received occurred more than four years ago. They further argue that the discovery rule contained in NRS 112.230 does not preserve plaintiff's claims because plaintiff had

- 5 -

access to the books and records necessary to investigate and timely file suit for more than four years.

Defendant Guetterman specifically argues that plaintiff's failure to file suit within the four-year limitations period was unreasonable and, therefore, that the discovery rule does not apply. In support, Guetterman notes that plaintiff was "specifically selected .... because he is an 'experienced receiver with significant experience'" and "whose firm 'provides services including receivership, forensic accounting, and other related work.'" (ECF No. 25 at 3).

At the motion to dismiss stage, however, the court cannot determine whether plaintiff's discovery of the alleged fraud and the subsequent timing of the filing were reasonable, as this presents a question of fact that is not appropriate for resolution at this juncture. *See Soper v. Means,* 903 P.2d 222, 224 (1995) (determining that the point when plaintiff discovers facts constituting their cause of action is a question of fact); *see also Bemis v. Est. of Bemis*, 967 P.2d 437, 440 (1998) ("Whether plaintiffs exercised reasonable diligence in discovering their causes of action 'is a question of fact to be determined by the jury or trial court after a full hearing.'") (citation omitted). Thus, plaintiff's actual fraud claim may continue.

*2. Constructive Fraud*

Plaintiff alleges constructive fraud under NRS 112.180(1)(b) and NRS 112.190(1), both of which are subject to the limitations set forth in NRS 112.230(1)(b). Defendants contend that NRS 112.230 is a statue of repose rather than a statute of limitations and, because NRS 112.230(1)(b) contains no discovery language, argue that the four-year period operates as an absolute bar to plaintiff's constructive fraud claim.

However, as another court in this district has explained when addressing whether NRS 112.180 constitutes a statue of repose barring a constructive fraud claim under NRS 112.180(1)(b), the Nevada Supreme Court has identified only three specific statutes as statues of repose—none of which are NRS 112.230—and has not indicated any intent to expand that list. *Morgan Stanley High Yield Sec. Inc. v. Jecklin*, No. 2:05-cv-01364-RFB-PAL, 2019 WL 1440258, at *11 (D. Nev. Mar. 31, 2019), *aff'd in part, rev'd in part by Invesco High Yield Fund v. Jecklin*, No. 19-15931, 2021 WL 2911739 (9th Cir. July 12, 2021).

In *Morgan Stanley*, the court ultimately concluded that "a reasonable plaintiff in this matter may not have discovered the potentially fraudulent nature of the transfers" until after the expiration of the statute of limitations and thus applied the discovery rule. *Id.* This court reaches the same conclusion. Because application of the discovery rule presents a question of fact, the court declines to dismiss plaintiff's constructive fraud claim at this time.

### B. Claim Two: Unjust Enrichment

Defendants next argue that plaintiff's unjust enrichment claim is time barred by NRS 11.190(2)(c). "Unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another." *Nevada Indus. Dev. v. Benedetti*, 741 P.2d 802, 804 n.2 (Nev. 1987). "The statute of limitation for an unjust enrichment claim is four years. *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011) (citing NRS 11.190(2)(c)).

However, in *In Re Amerco Derivative Litig.*, the Nevada Supreme Court held that the discovery rule applies when analyzing a claim of unjust enrichment and reversed the district court for dismissing the case without making a factual determination on whether the statute of limitations had run. *Id.* This court is bound by this rationale and, thus, plaintiff's unjust enrichment claim survives the motion to dismiss stage.

### C. Claim Three: Costs, Expenses, and Attorneys' Fees

Defendant Guetterman argues that plaintiff's third cause of action for attorneys' fees and costs fails as a matter of law. The court agrees with this argument as there is no independent basis for attorneys'' fees. "Absent statutory or contractual authorization, the allowance of attorneys' fees is disfavored." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1120 (9th Cir. 2002). Plaintiff does not point to any statutory or contractual authorization that would entitle it to attorneys' fees. Still, plaintiff correctly contends that this court has "the power to award attorneys' fees 'in exercise of [its] equitable powers.'" *Id.* (quoting *Hall v. Cole*, 412 U.S. 1, 5 (1973)).

Accordingly, plaintiff's third cause of action is dismissed. However, dismissal does not foreclose the possibility that this court could eventually award attorneys' fees.

. . .
. . .
. . .

D. Doctrine of Laches

In addition to the statute of limitations attacks, defendant Guetterman raises the defense of laches. "Laches is an equitable time limitation on a party's right to bring suit." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 835 (9th Cir. 2002). Whether the equitable defense of laches bars an action is a discretionary determination to be made by the court based upon the particular facts presented. *Apache Survival Coalition v. United States,* 21 F.3d 895, 905 (9th Cir. 1994). However, "[i]t is extremely rare for laches to be effectively invoked when a plaintiff has filed his action before limitations in an analogous action at law have run. *Shouse v. Pierce Cnty.*, 559 F.2d 1142, 1147 (9th Cir. 1977)

"To establish laches a defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself." *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000). Guetterman claims that the delay between plaintiff being appointed as the receiver and the bringing of this suit is unreasonable. But the timeliness of plaintiff's suit requires a factual determination that is inappropriate at this stage. *See* Section III(a)(1), *supra*.

Even if the court were to agree with Guetterman on the delay element of laches, he also fails to establish prejudice. Guetterman claims that the memory of potential witnesses he may call in support will have faded and documents that may have supported him could have been discarded in the ordinary course. However, he does not identify any specific witnesses or documents that are affected by this passage of time. This argument it too speculative to support prejudice.

Guetterman also asserts that he "reasonably believed that the compensation he received" was legitimate and has thus spent the funds on "living expenses, family obligations, and other expenditures over the course of more than four years." (ECF No. 19 at 6). Many lawsuits take place years after allegedly ill-gotten funds have been received and foreseeably expended. Accepting that position would effectively bar countless claims based solely on the passage of time. Additionally, Guetterman provides no legal support for this argument.

The court therefore finds that Guetterman has not satisfied the necessary requirements for the doctrine of laches to apply in his defense here.

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants Bruerd and Voydat's motions to dismiss (ECF Nos. 13, 17) be, and the same hereby are, DENIED.

IT IS FURTHER ORDERED that defendant Guetterman's motion to dismiss (ECF No. 19) be, and the same hereby is, GRANTED in part and DENIED in part in accordance with the foregoing.

DATED January 5, 2026.

_____
UNITED STATES DISTRICT JUDGE