UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GEOFF WINKLER, AS RECEIVER FOR
PROFIT CONNECT WEALTH SERVICES,
INC.,

Plaintiff(s),

v.

ARNOLD THOMPSON, et al.,

Defendant(s).

Case No.2:25-CV-1522  JCM (DJA)

ORDER

Presently before the court are defendants David Bruerd, Bethany Voydat, and John Guetterman's motions for summary judgment.  (ECF Nos. 42, 43).  Plaintiff Geoff Winkler, as receiver for Profit Connect Wealth Services, Inc., filed a response (ECF No. 49), to which defendants replied (ECF No. 56).

I.    **Background**

On July 16, 2021, the U.S. District Court for the District of Nevada unsealed an SEC action that was brought against Joy Kovar and Brent Kovar.  (ECF No. 1 at 6).  Since at least May 2018, the Kovars raised investor funds through Profit Connect Wealth Services, Inc. ("Profit Connect"), while assuring investors their money would be invested in securities trading and cryptocurrencies based on recommendations made by an "artificial intelligence supercomputer."  (*Id.*).

The Kovars told investors that they had the opportunity to invest by opening a "Wealth Builder" account and purchasing a supercomputer "seat" that represented "cycle time on our supercomputer system."  (*Id.*).  These accounts were allegedly "not affected by the current market

volatility" because "the supercomputer system guides the use of Profit Connect internal funds to be focused on long and short position in foreign currency, stocks, block-chain calculations, venture capital services and real estate opportunities." (*Id.*).

The Kovars claimed Profit Connect's supercomputer generated enormous returns, which allowed Profit Connect to guarantee investors fixed returns of twenty to thirty percent per year with monthly compounding interest. (*Id.*). In reality, over ninety percent of Profit Connect's funds came from investors. (*Id.*).

The Kovars then allegedly misused investor money by transferring millions of dollars to the Kovars' personal bank accounts, paying agents, and making "Ponzi-like payments to other investors." (*Id.*).

In the SEC action, the Kovars agreed to a preliminary injunction prohibiting future violations of the Securities and the Exchange Act, and further agreed to the appointment of a permanent receiver of Profit Connect because they did "not dispute that the SEC [was] able to the make the requisite showing in order to obtain an asset freeze . . . and [the] appointment of a permanent receiver over Profit Connect and all of its subsidiaries and affiliates." (*Id.*). The court then appointed plaintiff Geoff Winkler as the permanent receiver of Profit Connect on August 6, 2021, granting Winkler broad authority to investigate claims and institute actions and legal proceedings on behalf of Profit Connect and its investors. (*Id.*).

The Kovars relied on agents or promoters to market Profit Connect, and from May 2018 through July 2021, these agents or promoters were paid over $3 million, or approximately twenty-six percent of the funds from investors. (*Id.* at 7). Winkler now brings suit against the agents and promoters of Profit Connect alleging (1) fraudulent transfer, (2) unjust enrichment, and (3) costs, expenses, and attorneys' fees. (*See id.* at 7–12).

Although eighteen individuals have been sued, only three (David Bruerd, Bethany Voydat, and John Guetterman) (collectively "defendants") have filed motions for summary judgment. For the purpose of this order, the following additional facts are relevant. Between August 13, 2020, and July 8, 2021, Profit Connect transferred to defendant David Bruerd $36,401.10 in purported bonuses or commissions for bringing investors into Profit Connect. (*Id.* at 9). Between August 19, 2020, and July 12, 2021, Profit Connect transferred to defendant Bethany Voydat $37,622.88 in purported bonuses or commissions for bringing investors into Profit Connect. (*Id.*). Between March 4, 2019, and July 6, 2021, Profit Connect transferred to defendant John Guetterman $203,634.65 in purported bonuses or commissions for bringing investors into Profit Connect. (*Id.*).

On June 22, 2023, plaintiff sent defendants demand letters stating that he had "completed an independent forensic accounting of the business and financial activities of the Receivership Entities, including of funds received from and paid to investors, and has concluded that the Receivership Entities were used to operate a Ponzi scheme." (ECF No. 42, Ex. A; ECF No. 43, Exs. A, B). Plaintiff included the amount he believes is recoverable from each defendant in their respective demand letters. (*See id.*).

On August 15, 2025, plaintiff brought suit in this court. (*See* ECF No. 1). On January 5, 2026, the court ruled on defendants' motions to dismiss—granting in part and denying in part. (ECF No. 40). Defendants now move for summary judgment on all claims against them.

## II.      Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate

and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the

- 4 -

opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the non-moving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. If the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

"Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent

claims.'" *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (footnotes omitted) (quoting Fed. R. Evid. 901(a)). "Th[e Ninth Circuit] has consistently held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994) (quoting *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)).

However, the Ninth Circuit has more recently held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")); *see also JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("[A]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony.").

**III.   Discussion**

A. Statute of Repose

Defendants argue that plaintiff is barred from suing because NRS 112.230 is a statute of repose rather than a statute of limitations. In the court's order ruling on dismissal, the court stated that NRS 112.230 was not a statute of repose. (ECF No. 40 at 6–7). The court finds it necessary to revisit this argument.[1]

---

[1] The court has previously addressed the statute of repose issue. However, because defendants raised it again in their reply in support of their motions for summary judgment, and plaintiff had no opportunity to respond—nor filed a motion for a sur-reply—the court addresses it here. The court finds that no additional argument from plaintiff

A statute of repose and a statute of limitations serve related but distinct purposes. A statute of repose bars a cause of action after a specified period of time, regardless of when the cause of action was discovered or a recoverable injury occurred. *FDIC v. Rhodes*, 336 P.3d 961, 965 (Nev. 2014); *Byrne as Tr. of UOFM Tr. v. Sunridge Builders, Inc.*, 475 P.3d 38, 41 (Nev. 2020). A statute of limitations, by contrast, prohibits a suit after a period of time that follows the accrual of the cause of action. *Allstate Ins. Co. v. Furgerson,* 766 P.2d 904, 906 n. 2 (Nev. 1988). A statute of repose conditions the cause of action on filing suit within the statutory period and, as the Supreme Court of Nevada has explained, "defines the right involved in terms of the time allowed to bring suit." *Rhodes*, 336 P.3d at 965 (quoting *P. Stolz Family P'ship L.P. v. Daum,* 355 F.3d 92, 102 (2nd Cir. 2004)).

The purpose of a statute of repose is to give a defendant peace of mind by barring delayed litigation, thereby preventing unfair surprises from the revival of claims that have remained dormant for a period during which evidence has vanished and memories have faded. *See Underwood Cotton Co. v. Hyundai Merch. Marine (Am.), Inc.*, 288 F.3d 405, 408–09 (9th Cir. 2002). Statutes of repose also encourage plaintiffs to bring actions in a timely manner, but the rationale has a different emphasis than a statute of limitations: statutes of repose effect a legislative judgment that a defendant should be free from liability after a legislatively determined period. *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014).

A critical distinction between statutes of limitation and repose is their treatment of tolling. Statutes of limitations are subject to equitable tolling, a doctrine that pauses the running of the limitations period when a litigant has pursued his rights diligently by some extraordinary circumstance prevents him from bringing a timely action. *See id.* (citing *Lozano v. Montoya*

---

is necessary.

- 7 -

*Alvarez*, 572 U.S. 1, 10 (2014)); *Copeland v. Desert Inn Hotel,* 673 P.2d 490, 492 (Nev. 1983). Statutes of repose, on the other hand, generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control. *Waldberger*, 573 U.S. at 9.

NRS 112.230 provides for limitations on actions brought under NRS 112.180 and NRS 112.190. The statute reads as follows:

1. A claim for relief with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:

(a) Under paragraph (a) of subsection 1 of NRS 112.180, within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant;

(b) Under paragraph (b) of subsection 1 of NRS 112.180 or subsection 1 of NRS 112.190, within 4 years after the transfer was made or the obligation was incurred; or

(c) Under subsection 2 of NRS 112.190, within 1 year after the transfer was made or the obligation was incurred.

2. This section does not apply to a claim for relief with respect to a transfer of property to a spendthrift trust subject to chapter 166 of NRS.

NRS 112.230.

Only one case from the District of Nevada addresses whether NRS 112.230 is a statue of repose. In *Morgan Stanley High Yield Sec. Inc. v. Jecklin*, No. 2:05-cv-01364-RFB-PAL, 2019 WL 1440258, at *11 (D. Nev. Mar. 31, 2019), the court concluded it was not. While the *Jeckliin* court correctly recognized that Nevada's statutes of repose typically arise in the construction context, it did not examine how other states with UFTA statutes address limitations periods. *Id.* This court undertakes that analysis here.

Nevada's Uniform Fraudulent Transfer Act ("UFTA") is nearly identical in language to those in its sister states of California, Arizona, and Idaho. *See* Cal. Civ. Code § 3439.09; Ariz.

Rev. Stat. Ann. § 44-1009; Idaho Code Ann. § 55-918. When analyzing the UFTA of these other states, courts consistently hold that UFTA statutes contain a statute of repose. *See F. Ins. Co. v. Comparet*, 62 F. App'x 151, 152 (9th Cir. 2003) (stating California's UFTA is a statute of repose); *In re Slatkin*, 222 F. App'x 545, 547 (9th Cir. 2007) (same); *Donell v. Keppers*, 835 F. Supp. 2d 871, 878 (S.D. Cal. 2011); *Moore v. Browning*, 50 P.3d 852, 859 (Ariz. Ct. App. 2002) (stating Arizona's UFTA is a statute of repose); *Warfield v. Alaniz*, 453 F. Supp. 2d 1118, 1130 (D. Ariz. 2006), *aff'd*, 569 F.3d 1015 (9th Cir. 2009) (same); *Klein v. Cap. One Fin. Corp.*, No. 4:10-CV-00629-EJL, 2011 WL 3270438, at *7 (D. Idaho July 29, 2011) (holding Idaho's UFTA is a statute of repose).

This court likewise finds that Nevada's UFTA constitutes a statute of repose. Specifically, NRS 112.230(1)(b–c)—which applies to claims arising under NRS 112.180(1)(b) and NRS 112.190(1–2)—are statutes of repose. As with California's UFTA, these provisions establish an "overarching, all-embracing maximum time period to attack a fraudulent transfer, no matter whether brought under the UFTA or otherwise." *Comparet*, 62 F.App'x at 152; *In re Slatkin*, 222 F.App'x at 547.

The textual differences between subsection (1)(a) and subsections (1)(b) and (1)(c) further confirm that subsections (1)(b) and (1)(c) were intended to impose a maximum period. Unlike NRS 112.230(1)(b–c), NRS 112.230(1)(a) explicitly contains discovery language, which is a hallmark of a statute of limitations and absent in statutes of repose. Indeed, Arizona courts have held that the discovery language in its equivalent to section (1)(a) is not absolutely time barred and claims under this section may continue so long as the plaintiff "can show 'that through the exercise of reasonable diligence,' he did not discover and could not have discovered the fraudulent nature of the transfers earlier than one year" before filing suit. *Warfield*, 453 F. Supp. 2d at 1131 (quoting

*Moore*, 50 P.3d at 859). Accordingly, the court finds that the discovery language in NRS 112.230(1)(a) indicates it is a statute of limitations rather than a statute of repose.

Plaintiff asserts constructive fraud claims under NRS 112.180(1)(b) and NRS 112.190(1), both of which are governed by the four year statute of repose set forth in NRS 112.230(1)(b–c). To be timely, a suit must have been filed within four years of the challenged transfer.

Plaintiff filed this action on August 15, 2025. According to the complaint, the last transfers to each defendant occurred as follows: to Guetterman on July 6, 2021; to Bruerd on July 8, 2021; and to Voydat on July 12, 2021. Because each of these transfers took place more than four years before the filing date, plaintiff's claims against all three defendants fall outside the statute of repose and are untimely as a matter of the law.

B. The Discovery Rule

Plaintiff also contends that defendants carried out transfers with the actual intent to hinder, delay, or defraud under NRS 112.180(1)(a). This claim is governed by the statute of limitations and discovery rule set forth in NRS 112.230(1)(a).

On June 22, 2023, plaintiff notified defendants that he had completed an independent forensic review of the business and financial actives and had calculated the amount he believed to be recoverable. (*See* ECF No. 42, Ex. A; ECF No. 43, Ex. A, B). Under NRS 112.230(1)(a), plaintiff was required to file suit within four years of the actual transfer or within one year of discovering the transfer. The most recent transfer to any defendant occurred on July 12, 2021, making the four-year deadline July 12, 2025. Plaintiff did not file suit by that date.

Alternatively, plaintiff could have filed within the one-year discovery window. The court determines that discovery occurred on June 22, 2023—the date plaintiff sent demand letters to defendants. One year from that date was June 22, 2024, and plaintiff had not initiated suit by then

either.  Accordingly, plaintiff's claims under NRS 112.180(1)(a) are untimely.

### C.  Equitable Tolling

Plaintiff seeks to rescue these causes of action by invoking equitable tolling.  However, as addressed above, equitable tolling does not apply to statutes of repose, and there is no basis to preserve the NRS 112.180(1)(b) or 112.190(1) claims on this ground.  Moreover, the court concludes that the discovery clause in NRS 112.230(1)(a) independently forecloses plaintiff's argument.

Equitable tolling is a non-statutory doctrine that allows a court to pause a limitations period and permit an otherwise time-barred action to go forward when justice demands it.  *Fausto v. Sanchez-Flores*, 482 P.3d 677, 680 (Nev. 2021).  There is a presumption that equitable tolling applies when the relevant period is a statue of limitations and when tolling would be compatible with the statute.  *Id.* (quoting *Lozano,* 572 U.S. at 11).  Although the Nevada Supreme Court has recognized that equitable tolling is an evolving doctrine, the court is not persuaded that applying it here would be consistent with the statute.  *Id.*

NRS 112.230(1)(a) already provides a built-in timeframe for parties who may face difficulty filing within the four-year window—the legislature anticipated this and provided a mechanism to maintain an action nonetheless.  This framework largely absorbs plaintiff's rationale for equitable tolling. By granting an additional year keyed to discovery, the legislature recognized that situations like this one may arise, where a party must "employ computer forensic experts" or "use the third-party subpoena process to obtain records."  (ECF No. 49 at 11).  The complexity of this case and the sophisticated investigative tools needed to uncover the fraudulent transfers are precisely why no rigid deadline governs filing and why the one-year discovery period exists; to give plaintiffs time to identify and pursue these claims.

- 11 -

Thus, plaintiff's first cause of action is untimely as a matter of law and must be dismissed as to defendants Bruerd, Guetterman, and Voydat. [2]

D. Unjust Enrichment

The court must determine whether Nevada's UFTA displaces common law causes of action for fraudulent conveyance. Because Nevada courts have not addressed this issue, the court looks to other jurisdictions for guidance.

The Ninth Circuit has reached different conclusions depending on the state statute at issue. In *Klein v. Beck*, 589 F. App'x 357 (9th Cir. 2015), the court found that Idaho's UFTA does not displace unjust enrichment. By contrast, in *Attebury Grain LLC v. Grayn Co.*, 721 F. App'x 669, 672 (9th Cir. 2018), the court held that California's UFTA does displace common law fraudulent conveyance claims. ("[t] his theory describes a viable fraudulent transfer claim, which displaces an unjust enrichment cause of action."). Arizona courts have similarly concluded that their UFTA displaces common law fraudulent conveyance claims. *Moore v. Browning*, 50 P.3d at 858.

Nevada courts routinely look to California law for guidance, and this court finds California's approach persuasive. Where a viable UFTA claim exists, unjust enrichment is displaced. Here, but for plaintiff's untimely filing, viable UFTA claims existed against defendants. The court therefore concludes that the Nevada UFTA displaces plaintiff's unjust enrichment claims. Accordingly, the unjust enrichment claim against defendants Brued, Guetterman, and Voydat is dismissed.

. . .

---

[2] To the extent plaintiff contends that filing suit under "all applicable law and principles of equity" preserves unpled or unspecified legal theories, the court disagrees. (ECF No. 49 at 11). Such boilerplate language fails to meet the particularity requirements of Federal Rule of Civil Procedure 9(b) or the plausibility standard of Rule 8(a) and therefore cannot sustain a fraud claim.

E.  Attorneys' Fees

Defendants seek dismissal of plaintiff's cause of action for attorneys' fees.  The court has previously determined that no independent basis for attorneys' fees exists.  (ECF No. 38 at 7).  However, because all claims against the moving defendants have now been dismissed, this issue is now moot.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motions for summary judgment (ECF Nos. 43, 42) be, and the same hereby are, GRANTED.

DATED April 10, 2026.

_____
UNITED STATES DISTRICT JUDGE

- 13 -